# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANDRA K. ZIMNICKI, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 06 C 4879 |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| NEO-NEON INTERNATIONAL, LTD., et al. | ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Neo-Neon International, Ltd's ("Neo-Neon") Rule 12(c) motion for judgment on the pleadings with respect to Plaintiff Sandra Zimnicki's ("Zimnicki") unjust enrichment claim. For the following reasons, Neo-Neon's motion is denied.

## I. BACKGROUND[1]

### A. Facts

Zimnicki designs decorative holiday lighting products. Since 1987, Zimnicki has marketed and licensed products under her North Pole Village brand name. In 2003, Zimnicki entered into an agreement with Leonard Friedman ("Friedman"), pursuant to which Zimnicki granted Friedman a license to produce and sell Zimnicki's North Pole Village products (the "NPV Products") in exchange for royalty payments. Friedman, in turn, arranged for Neo-Neon, a Chinese corporation, to manufacture the NPV Products. In August 2004, Friedman entered into a written agreement with Neo-Neon (the "Friedman/Neo-Neon Agreement") that allowed Neo-Neon to sell the NPV Products it was producing for Friedman to Neo-Neon customers in exchange for a five percent royalty payable to Friedman. In December 2004, Friedman

---

[1] The following facts are taken from Zimnicki's fourth amended complaint.

terminated the Friedman/Neo-Neon Agreement after Neo-Neon failed to account for its sales of the NPV Products.

In February 2004, Zimnicki entered into her own agreement with Neo-Neon (the "Zimnicki/Neo-Neon Agreement"). Zimnicki and Peter Jang, Neo-Neon's vice-president, "verbally agreed that Zimnicki would produce designs for pre-lit holiday decorations and license them to Neo-Neon for production, distribution, and sale pursuant and subject to a license agreement to be negotiated and agreed to." Compl. ¶ 23. According to Zimnicki, under the Zimnicki/Neo-Neon Agreement, her designs would not be works made for hire.

In April 2004, Zimnicki traveled to Neo-Neon's factory in China to meet with product buyers and present designs for future manufacturing in the event that Zimnicki and Neo-Neon came to terms on a licensing agreement. Zimnicki presented at least seventy designs in China between April 2004 and July 2004. Zimnicki and Neo-Neon ultimately could not come to terms on a licensing agreement, however, and Zimnicki therefore left China and took her design drawings back with her to the United States.

In 2005 and 2007, after returning to the United States, Zimnicki applied for and received certificates of United States copyright registration for twenty-eight of her holiday lighting product designs, including thirteen of her North Pole Village designs. Zimnicki alleges that the twenty-eight designs she registered were among the seventy designs she presented in China in 2004.

According to Zimnicki, since Zimnicki left China in 2004, Neo-Neon has issued: (1) "a 2005-2006 Retail Products Catalog depicting at least eighty photographs of products copying Zimnicki's designs"; (2) "a 2006-2007 New Products Catalog depicting at least twenty-five photographs of products copying Zimnicki's designs"; (3) "at least two 2007-2008 catalogs

depicting at least 175 photographs of products copying Zimnicki's designs"; and (4) "at least two 2008-2009 catalogs depicting at least thirty-eight photographs of products copying Zimnicki's designs." Compl. ¶¶ 27-30. Zimnicki claims that all these catalogs were made available in the United States. In addition, Zimnicki alleges that online retailers in several other countries have offered products produced by Neo-Neon that infringe on Zimnicki's copyrighted designs. See, e.g., id. ¶ 76 ("Zimnicki has discovered at least forty-four online retailers in at least fifteen countries that have offered, and/or are presently offering, products that infringe the '846 Registration on websites accessible from the United States.").

## B. Procedural History

On September 8, 2006, Zimnicki filed a one-count copyright infringement complaint against Menard, Inc., Roman, Inc., and Cornerstone Brands, Inc. d/b/a Frontgate. Zimnicki amended her complaint on January 19, 2007 to add United Hardware Distributing Company d/b/a Hardware Hank as a defendant. On August 24, 2007, Zimnicki amended her complaint again, adding Neo-Neon Holding Ltd. and Seasonal Concept's Inc. as defendants and including four copyright infringement counts. Zimnicki's third amended complaint, filed on November 16, 2007, replaced former defendant Neo-Neon Holding Ltd. with current defendant Neo-Neon International, Ltd. On March 18, 2009, Zimnicki filed her fourth amended complaint, which is the operative complaint before the Court.

Zimnicki's fourth amended complaint contains 34 counts, including 31 claims against Neo-Neon for copyright infringement, trademark infringement and unjust enrichment. Zimnicki's unjust enrichment claim alleges that, "[b]y retaining profits earned as a result of producing, advertising, distributing, and/or selling products based upon designs produced through Zimnicki's time, skill, creativity, and efforts without compensating Zimnicki for

3

preparing those designs, Neo-Neon has unjustly retained the benefits of Zimnicki's services." Compl. ¶ 423.

Neo-Neon filed its answer to Zimnicki's fourth amended complaint on May 29, 2009. On August 5, 2009, Neo-Neon filed a Rule 12(c) motion for judgment on the pleadings (the "Motion") with respect to Zimnicki's unjust enrichment claim. The Motion is now fully briefed and before the Court.

## DISCUSSION

### A. Standard of Review

Under FED. R. CIV. P. 12(c), a party can move for judgment on the pleadings once the parties have filed the complaint and answer. N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998). A motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 633 (7th Cir. 2007). Accordingly, in order to defeat a Rule 12(c) motion for judgment on the pleadings, a plaintiff must demonstrate that his or her complaint provides notice of plaintiff's claims and the grounds upon which they rest, and must contain sufficient allegations, based on more than speculation, to state a claim for relief that is plausible on its face. St. John's United Church of Christ v. City of Chi., 502 F.3d 616, 625 (7th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Bell Atl. Corp., 550 U.S. at 555 (citation omitted) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). The Court, however, must accept as true the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. St. John's, 502 F.3d at 625.

4

A court may rule on a Rule 12(c) motion for judgment on the pleadings based on a review of the pleadings alone. N. Ind. Gun, 163 F.3d at 452. The pleadings include the compliant, the answer, and any written instruments attached as exhibits, such as affidavits, letters, contracts, and loan documentation. Id. at 452-53. In ruling on a motion for judgment on the pleadings, "the district court may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record." U.S. v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991).

## B. Analysis

Neo-Neon contends that Zimnicki's unjust enrichment claim is preempted pursuant to the Federal Copyright Act, 17 U.S.C. § 301 and therefore must be dismissed. The Court does not agree.

Section 301 of the Copyright Act provides that:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

Accordingly, the Copyright Act preempts a party's state-law claim if two conditions are met: (1) "the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102"; and (2) "the right must be equivalent to any of the rights specified in § 106." Baltimore Orioles, Inc. v. Major League Baseball Players Assoc., 805 F.2d 663, 674 (7th Cir. 1986).

5

Importantly, however, because "federal copyright law does not apply to extraterritorial acts of infringement," the Copyright Act "does not preempt causes of action premised upon possible extraterritorial infringement." Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 387 (9th Cir. 1995); see also Illustro Sys. Int'l, LLC v. IBM Corp., No. 3:06-CV-1969-L, 2007 WL 1321825, at *13 (N.D. Tex. May 4, 2007) (holding that plaintiff's unjust enrichment claim was not preempted by the Copyright Act because plaintiff could not "claim protection under the Copyright Act for acts that occurred outside of the United States"). Thus, in Allarcom, where defendant's potential infringing acts took place in Canada, plaintiff's state law claims were not preempted by the Copyright Act because United States copyright law did not apply. 69 F.3d at 387.

Here, Zimnicki argues that its unjust enrichment claim addresses Neo-Neon's extraterritorial sales of her designs and therefore is not preempted by the Copyright Act. Indeed, Zimnicki's Complaint, read broadly, can be plausibly interpreted to allege extraterritorial infringement of her copyrights. See Compl. ¶¶ 76, 423. Therefore, to the extent that Zimnicki's unjust enrichment claim concerns extraterritorial copyright infringement, the claim is not preempted by the Copyright Act. See Allarcom, 69 F.3d at 387; Illustro, 2007 WL 1321825, at *13.

Neo-Neon asserts that Allarcom and Illustro are not applicable here because in those cases "the first element of the preemption test – whether the works are within the subject matter of the Copyright Act – was simply not met" and in the present case Zimnicki has effectively conceded that her designs meet the subject matter requirement simply by bringing her copyright infringement claims. Neo-Neon Reply at 9-10. Neo-Neon misreads the holdings of Allarcom and Illustro, however. In Allarcom and Illustro, the plaintiffs' state law claims concerning

6

extraterritorial infringement were held not to be preempted by the Copyright Act because defendants failed to satisfy the § 106 "equivalence" prong of the Baltimore Orioles preemption test, not the § 102 subject matter prong. See Nimmer on Copyright, § 101[B], n.40 (citing Allarcom, 69 F.3d at 387) ("Given the territorial limitation of rights created under § 106, . . ., *allegations of copyright infringement occurring abroad are not equivalent to the exclusive rights specified under § 106, and hence are not subject to pre-emption.*") (emphasis added); see also Illustro, 2007 WL 1321825, at *13 (holding that plaintiff's unjust enrichment claim was not preempted because defendant did not satisfy the § 106 prong of the Copyright Act preemption test). Thus, Neo-Neon's attempt to distinguish Allarcom and Illustro based on the application of the § 102 subject matter prong of the Copyright Act preemption test is unavailing.

## III. CONCLUSION

For the foregoing reasons, Neo-Neon's motion for judgment on the pleadings is denied. IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: November 9, 2009

7